**Denise R. TAYLOR, Plaintiff,**

v.

**CARDIOVASCULAR SPECIALISTS, P.C., Defendant.**

**Civil Action No. 1:11–cv–4521–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

Signed March 17, 2014.

Amanda S. Thompson, Salter Thompson Law, P.C., Atlanta, GA, for Plaintiff.

Jennifer D. Stancil, David Frank Root, Carlock Copeland & Stair, LLP, Atlanta, GA, for Defendant.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

Plaintiff Denise Taylor worked as a medical assistant for Defendant Cardiovascular Specialists, P.C. (CVS) from January 2004 until April 2011. Nine months before her termination, Taylor filed a formal complaint about the inappropriate and offensive workplace conduct of her coworker, Rodney Bishop. This was not her first complaint about Bishop's conduct: over the years, Taylor had informally complained numerous times to Sue Bowden, her immediate supervisor and CVS's office manager, but no formal action was ever taken against him.

In July 2010, Taylor learned that Bishop is on the Georgia sex-offender registry for conduct involving a minor. She took this information to Bowden, who already knew. Indeed, Bowden allegedly asked Taylor to keep this news quiet, as some of the physicians did not know. In short, Bowden's response to Taylor's complaint was to express concern for Bishop's job. Unsatisfied with this response, Taylor filed a formal complaint with the managing physician.

After reporting Bishop's conduct, Taylor claims that CVS retaliated against her. The alleged retaliation included subjecting her to increased and undue scrutiny, disciplining her disparately, treating her with hostility and disrespect (including physical contact by a coworker), terminating her employment, and providing a negative reference following her termination. Most of these actions were taken by Sue Bowden.[1]

About a month after her termination, Taylor filed a charge of discrimination and retaliation with the EEOC. After receiving a right-to-sue notice, this action followed. When discovery closed, CVS moved for summary judgment. The magistrate judge issued a lengthy report and recommendation, recommending that CVS's motion be denied [62]. CVS timely objected. After de novo review, the recommendation of the magistrate judge will be accepted, and CVS's motion for summary judgment will be denied.

## I. Standard of Review

■ After conducting a "careful and complete" review of a magistrate judge's findings and recommendations, a district judge may accept, reject or modify a magistrate judge's R & R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir.1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir.1982) (en banc)) (internal quotation mark omitted).[2] A district judge

---

1. Many additional facts are set forth in the thorough, ninety-one-page R & R. While some of these facts are discussed below, the Court presumes familiarity with the facts and will not restate them.

2. The Eleventh Circuit has adopted as binding

"shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir.1990). Those portions of an R & R to which an objection is not asserted may be reviewed for clear error. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir.1983).

CVS's objections are to the magistrate judge's legal conclusions rather than his factual findings. Thus, the magistrate judge's factual findings, which are not clearly erroneous, are adopted. The magistrate judge's legal conclusions are subject to de novo review.

## II. Legal Standard

Summary judgment is proper when no genuine issue about any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary

judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. Discussion

■ Title VII prohibits employers from retaliating against employees for opposing any unlawful employment practice. 42 U.S.C. § 2000e–3(a); *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir.2008). A sexually hostile work environment is prohibited by Title VII. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

Because Taylor's retaliation claim is based on circumstantial evidence, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined by later cases governs

precedent all Fifth Circuit decisions issued before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). Additionally, all decisions issued after that date "by a non-unit panel of the Former Fifth, the full en banc court of the Former Fifth, or Unit B panel of the Former Fifth" are binding precedent absent a contrary en banc Eleventh Circuit decision. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir.1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n. 4 (11th Cir. 2009) (discussing the continuing validity of *Nettles*).

the analysis. Under that framework, the burden of production shifts back and forth, but the burden of persuasion always rests with Taylor. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir.2008).

 Taylor's first step under that framework is to establish a prima facie case of retaliation. This requires evidence of (1) statutorily protected conduct; (2) a materially adverse action; and (3) a causal connection between the protected conduct and the adverse action. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013). Establishing a prima facie case creates a rebuttable presumption that the driving force behind the materially adverse action was an intent to retaliate. To rebut this presumption, CVS may then offer a legitimate, nondiscriminatory reason for the materially adverse action. If it does, then Taylor must come forward with proof that the proffered reason is merely pretext. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181–82 (11th Cir.2010). Summary judgment is thus inappropriate where the evidence, viewed in the light most favorable to Taylor, creates a reasonable inference that the materially adverse action was the result of an intent to retaliate. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir.2011).

CVS claims that summary judgment is appropriate because Taylor cannot establish any of the elements of a prima facie case. It further contends that even if she could, she cannot rebut its proffered reason for firing her: the need to reduce costs. After considering the facts in the light most favorable to Taylor, the magistrate judge disagreed and concluded that a reasonable jury could find that CVS unlawfully retaliated against Taylor following her July 2010 formal complaint. The Court agrees.

### A. Protected Activity

 The anti-retaliation provision applies only if Taylor engaged in protected activity, such as opposing a sexually hostile work environment. But employees like Taylor who "seek[ ] protection under the opposition clause must have a 'good faith reasonable belief' that her employer was engaged in unlawful discrimination." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir.1999). This means that Taylor must show that she "subjectively believed that [CVS] engaged in unlawful discrimination and that 'h[er] belief was *objectively* reasonable in light of the facts and record present.'" *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir.2010) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997)). And while the offensive conduct need not be unlawful discrimination, it "must be close enough to support an objectively reasonable belief that it is." *Clover*, 176 F.3d at 1351. Whether the offensive conduct is "close enough" to an unlawful employment practice is "measured against existing substantive law" at that time. *Id.*

The magistrate judge concluded that a reasonable jury could find that Taylor engaged in protected activity. CVS objects. In its view, Taylor could not have reasonably believed that a hostile work environment existed given the substantive law at the time of her complaint.[3] CVS contends that the isolated incidents of offensive conduct that allegedly took place over six years are not even close to constituting a hostile work environment. De novo review thus begins with the law of hostile-work-environment discrimination as of July 2010.

---

**3.** CVS does not object to the conclusion that Taylor had a good-faith, subjective belief. Be-

cause this conclusion is not clearly erroneous, it is adopted.

The most authoritative discussion is the unanimous, en banc decision from January 2010 in *Reeves v. C.H. Robinson Worldwide*, 594 F.3d 798 (11th Cir.2010) (en banc). *Reeves* reiterates the "core principles of employment discrimination law"— each of which is relevant here. First, a plaintiff alleging a hostile work environment must show that she was discriminated against because of her sex (or other protected characteristic) and that "the offensive conduct was either severe or pervasive enough to alter the terms or conditions of employment." Second, "Title VII is not a civility code," and profane and sexual language or conduct does not automatically constitute discrimination. Third, "workplace conduct cannot be viewed in isolation, but rather is to be viewed cumulatively, and in its social context." Finally, a plaintiff can experience a hostile work environment even if she is not the target of the offensive conduct. *Id.* at 807.

The well-established standard for a hostile-work-environment claim requires the plaintiff to show

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Id.* at 808 (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (en banc)).

▮▮▮▮ Evidence of offensive conduct is weighed "cumulatively and in the totality of the circumstances." *Id.* An environment is hostile when it is perceived to be such by the plaintiff and a reasonable person in the plaintiff's shoes would agree. *Id.* at 809. This perception may be based on the conduct's severity or pervasiveness. *Id.* at 808. Thus, courts measuring allegedly discriminatory conduct consider its "frequency . . .; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance." *Id.* at 808–09 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In the end, the question is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 809 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)) (internal quotation marks omitted).

### 1. When Is the Offensive Conduct "Close Enough" to Discrimination?

The parties agree that Taylor can have a reasonable, good-faith belief that CVS was a hostile work environment even if it was not.[4] But what they disagree about—and what underlies CVS's objection to the conclusion that Taylor's belief was objectively reasonable—is this: when is the opposed conduct "close enough" to discrimination "to support an objectively reasonable belief that it is"? *Clover*, 176 F.3d at 1351. If the circuit has provided a simple answer, neither the magistrate judge, the parties, nor the Court has found it.

▮▮▮▮ The circuit, however, has made clear that when the offensive conduct cannot reasonably constitute discrimination

---

4. CVS does not argue, contrary to Taylor's contention, that plaintiffs must show that the opposed conduct is actually sexual harassment.

(i.e., when it is contrary to circuit precedent or is not "anywhere near" sufficient), opposing that conduct does not constitute protected activity.[5] Put simply, subjectively offensive conduct falls along a spectrum. At one end is conduct that is nowhere near sufficient, so no reasonable person could believe it is discrimination. At the other end is conduct that as a matter of law is discrimination, so every reasonable person would believe it is discrimination. Between these poles is conduct that a reasonable person could, but is not required to, believe is discrimination. This strongly implies that offensive conduct is "close enough" to justify a reasonable belief so long as it *could* (even if it likely would not[6]) persuade a reasonable jury. This is the rule that will be applied here.

Interpreting the "close enough" standard in this way has several advantages. First, it is consistent with the oft-repeated maxim that reasonable people can disagree. Second, it recognizes that the purposes of the anti-retaliation and anti-discrimination provisions are different. As the Supreme Court has explained,

> The antidiscrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct.

*White*, 548 U.S. at 63, 126 S.Ct. 2405 (internal citation omitted). Third, it avoids placing an onerous burden on the plaintiff's prima facie case of retaliation. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089 (holding that under the *McDonnell Douglas* framework the "burden of establishing a prima facie case . . . is not onerous"). Finally, it prevents courts from engaging in an arbitrary evaluation of the underlying claim's likelihood of success.

Thus, Taylor's July 2010 formal complaint constitutes protected activity under the anti-retaliation provision only if the offensive conduct that she opposed, when viewed cumulatively and in its social context, comes anywhere near constituting sexual harassment. *Accord Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002) ("It is improper to retaliate against anyone for claiming a violation of Title VII unless that claim is 'completely groundless.' But a groundless claim is one resting on facts that no reasonable person possibly could have construed as a case of discrimination." (internal citation omitted)).

### 2. Was Taylor's Subjective Belief Reasonable?

■ CVS objects to the magistrate judge's conclusion that Taylor reasonably

---

5. *See, e.g., Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir.2008) ("Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable."); *Clover*, 176 F.3d at 1351–52 (holding that the plaintiff did not have an objectively

reasonable belief when the conduct she opposed "misse[d] the mark by a country mile").

6. In response to CVS's objections the R & R, Taylor tacitly admits that a hostile-work-environment claim would likely have failed: "One of the reasons [Taylor] did not bring a sexual harassment claim in this case was precisely because of the near impossible burden a sexual harassment plaintiff in this Circuit must meet."

believed that she worked in a hostile work environment and thus engaged in protected activity by filing her formal complaint in July 2010. In CVS's view, that conclusion was based on four types of offensive conduct: (1) sexually derogatory language, (2) the display of pornography, (3) miscellaneous conduct not directed at Taylor, and (4) physical contact. Appropriately, CVS concedes that each of these types of offensive conduct "may sometimes constitute sexual harassment." But the magistrate judge erred, CVS contends, by finding that a few isolated incidents over six years—none of which was physically threatening or impeded Taylor's job performance—were "close enough" to constituting "severe or pervasive" conduct that altered the terms or conditions of her employment.

This argument has two principal shortcomings. First, CVS considers the incidents of offensive conduct individually. In this circuit, however, they must be considered cumulatively. See *Reeves*, 594 F.3d at 808. Second, CVS fails to account for Taylor's numerous complaints to Bowden about Bishop's conduct—a disputed fact that must be resolved in Taylor's favor on summary judgment.[7] Thus, when the offensive conduct is viewed cumulatively, in light of Bowden's alleged inaction, and filtered through the fact that Bishop still had his job despite numerous complaints about his behavior (from Taylor and others) as well as CVS's knowledge that he was on the Georgia sex-offender registry for con-

duct involving a minor, a reasonable person could believe that the complained-of conduct created a hostile work environment.

## B. Materially Adverse Action

■ CVS challenges whether the "systematic campaign of retaliation" that Taylor allegedly suffered constitutes a materially adverse action. The thrust of CVS's contention is that the alleged instances of retaliation were trivial and immaterial. As CVS correctly notes, to establish this prong of the prima facie case, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Not every action that might be considered retaliation is protected; instead, only "retaliation that produces an injury or harm" is. *Id.* at 67, 126 S.Ct. 2405. By requiring that the harm be *material*, the Court separates the significant from the trivial. *Id.* at 68, 126 S.Ct. 2405. But the key portion of *Burlington* is the definition of *materially adverse*: conduct is materially adverse when "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C.Cir.2006)) (internal quotation mark omitted).

■ CVS attacks the alleged instances of retaliation individually. But the magis-

7. Indeed, it is this pattern of inaction that makes Taylor's retaliation claim possible. A hostile-work-environment claim fails unless the plaintiff establishes a basis for holding the employer liable. Because Taylor's alleged harasser is a coworker, CVS is liable "only if it was negligent in controlling working conditions," *Vance v. Ball State Univ.*, —— U.S. ——, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013)—meaning that CVS "knew or should have known about the [subjectively offensive] conduct and failed to stop it," *Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 759, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). To survive summary judgment, therefore, Taylor must establish facts from which a reasonable jury could conclude that CVS had either actual or constructive notice "of the harassment and failed to take immediate and appropriate corrective action." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir.2003).

trate judge considered and weighed them cumulatively to find that they created a triable question. This analysis is consistent with the Eleventh Circuit's recognition that "adverse actions which fall short of ultimate employment decisions"—such as discharge or failure to hire—are cognizable under the anti-retaliation provision because such conduct "could stifle employees' willingness to file charges of discrimination." *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998). Additionally, the circuit has long allowed for actions that might not be sufficient individually to be considered together. *Shannon v. Bellsouth Telecomms., Inc.,* 292 F.3d 712, 716 (11th Cir.2002); *Bass v. Bd. of Cnty. Comm'rs,* 256 F.3d 1095, 1118 (11th Cir.2001); *Wideman,* 141 F.3d at 1456; [8] *see also Putman v. Sec'y of Veterans Affairs,* 510 Fed.Appx. 827, 831–32 (11th Cir.2013) ("In the context of a retaliation claim, ... the cumulative weight of numerous individual incidents can be considered in determining whether the employee experienced materially adverse action.").

CVS attempts to distinguish the cases that the magistrate judge relied upon to conclude that the "campaign of retaliation" may have been sufficient to dissuade an employee from making a complaint. For example, CVS contends that Taylor's write-ups were not part of a progressive discipline plan that led to her termination. In its view, "[t]here were absolutely no consequences for any write-ups in Ms. Taylor's file, and there [was no] progressive discipline that led to her eventual termination." In other words, because Taylor was terminated for a nonretaliatory reason, whatever else she experienced is legally insufficient. On this point, however, the law is not so narrow.

Even assuming that Taylor's termination was for nonretaliatory reasons, a reasonable jury could conclude that she suffered a materially adverse action. That is, her sudden reprimands for actions that allegedly never happened or that others commonly committed but for which they were not chastised, the increased scrutiny, the derisive comments, and the negative employment reference that Bowden allegedly provided following Taylor's termination could—when taken together—dissuade a reasonable employee from making or supporting a charge of sexual harassment. Thus, the magistrate judge's conclusion that a jury question exists on the issue of materially adverse action was not error.[9]

## C. Causation

CVS contends that the magistrate judge erred by finding causation. CVS argues that the Supreme Court's recent decision in *University of Texas Southwestern Med-*

---

**8.** Before *Burlington,* the circuit required the plaintiff to establish an adverse employment action, which these cases recognized. After *Burlington,* however, the second element of a prima facie case requires the plaintiff to show only a materially adverse action, not an adverse employment action; thus, these cases were abrogated to the extent that they suggested otherwise. *See Crawford,* 529 F.3d at 975 ("We ... are persuaded that the adverse employment action standard previously applied in this circuit to Title VII retaliation claims is more stringent than the 'materially adverse' standard announced in *Burlington.*").

**9.** One section of CVS's objections to the R & R addresses whether the alleged negative reference that Taylor received was an "act of retaliation." Nothing in this Order depends on whether it was. The magistrate judge treated the negative reference as just another act in a series of acts that created a jury question about whether Taylor suffered a materially adverse action. If CVS believes that she cannot rely on this alleged act at trial, it may address that issue in its motions in limine.

*ical Center v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), "significantly heightened the causation standard for retaliation claims over the prior Eleventh Circuit standard." Even if CVS is correct, and *Nassar* changed the circuit's precedent on causation for retaliation claims, the magistrate judge's conclusion was not error.

▆▆▆▆ To establish causation for purposes of a Title VII retaliation claim, the plaintiff must prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533. Courts are to evaluate the causation element of a retaliation claim under "traditional principles of but-for causation." *Id.* Thus, by applying this standard, the magistrate judge did not err.

### D. CVS's Legitimate, Nondiscriminatory Reason

Finally, CVS argues that summary judgment is appropriate because Taylor cannot rebut the legitimate, nondiscriminatory reason it offers for her termination: the need to cut costs. This argument presumes that the only materially adverse action was Taylor's termination. In other words, CVS assumes that the magistrate judge erred in finding a triable question of whether Taylor's allegations that the pattern of increased criticism, suspicion and hostility that she endured after filing a formal complaint constitute a materially adverse action. But the magistrate judge did not err in reaching that conclusion. A reasonable jury could find for Taylor even if it agreed that she cannot rebut the proffered reason for her termination. Thus, summary judgment is inappropriate.

### IV. Conclusion

The R & R [62] is ADOPTED. CVS's motion for summary judgment [37] is DENIED. The parties shall file a proposed consolidated pretrial order within thirty days from the entry of this Order.